# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST A. THOMAS, *Plaintiff*, v. WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al.*, *Defendants.* | Civil Action No. 17-1508 (DLF) |

## MEMORANDUM OPINION

Before the Court is the Washington Metropolitan Area Transit Authority's (WMATA) Motion to Dismiss. Dkt. 3. For the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND

In this action, pro se plaintiff Ernest A. Thomas asserts age- and national origin-based employment discrimination claims against his employer, WMATA, and against his direct supervisor Sachit Kakkar and senior WMATA managers Paul J. Weidefeld and John T. Kuo (collectively, the Individual Defendants). *See* Compl. at 2–4, Dkt. 1; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17; Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. Thomas also asserts a retaliation claim. Compl. at 4.

Thomas is a 62-year-old U.S. citizen of Liberian national origin. *Id.* ¶ 1. He currently works for WMATA, *id.*, and he has a history of filing EEOC complaints against his employer for discrimination based on race, age, and national origin, and for retaliating against him because of

those claims, *see id.* ¶¶ 14, 20–24.  The past complaints include at least three formal complaints to the EEOC during a span of about fifteen months beginning in early 2014.  *Id.* ¶¶ 21–24.

In February 2017, Thomas applied for a promotion to the open position of Deputy Chief Vehicle Engineer.  *Id.* ¶ 3.  The next month, WMATA rejected Thomas's application, purportedly because he lacked the requisite ten years of management experience in transit engineering, which was part of the job description.  *Id.* ¶ 4.  This case arises from WMATA's decision not to promote Thomas.

Thomas asserts that his supervisor, Defendant Kakkar, made two revisions to the Deputy Chief Vehicle Engineer job requirements on January 11, 2017 before posting an opening for the job.  *Id.* ¶ 2.  Under the revisions, the Deputy Chief Vehicle Engineer position (1) now required ten years of transit-engineering-management experience, even though the more senior Chief Vehicle Engineer position required only five years; and (2) no longer required Professional Engineering qualifications.  *Id.* ¶¶ 6, 11.  Both changes allegedly disadvantaged Thomas, who has a Professional Engineering license but lacked ten years of experience.  *See id.*  Citing Thomas's failure to meet the ten-years requirement, WMATA ultimately rejected Thomas's bid for the promotion.  *Id.* ¶ 4.  WMATA later hired Anthony Johnson, a man of unspecified national origin who is allegedly about fifteen years younger than Thomas.  *Id.* ¶¶ 5, 37.  WMATA indicated that Johnson had the required ten-years' experience, but Thomas alleges that Johnson did not meet this requirement.  *Id.* ¶¶ 5, 8–9.

On April 13, 2017, Thomas filed employment discrimination claims with the EEOC based on national origin and age, as well as a retaliation claim.  Thomas received a Dismissal and Notice of Rights letter from the EEOC on April 28, 2017.  *See* Dkt. 7 at 2.  Thomas then

2

filed his complaint on July 27, 2017, seeking monetary and punitive damages and injunctive relief. Compl. at 9. The case was reassigned to the undersigned judge on December 4, 2017.

WMATA now moves for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (1) Thomas failed to exhaust administrative remedies under Title VII before bringing this action; (2) WMATA is immune from ADEA claims due to sovereign immunity; (3) the Individual Defendants must be dismissed because they acted in their official capacities; (4) Thomas failed to state a claim for national-origin discrimination under Title VII; and (5) WMATA is immune from punitive damages. *See* Mem. at 7–13, Dkt. 3.[1] The Court discusses each in turn.

## II. LEGAL STANDARDS

Under Rule 12(b)(1), a party may move to dismiss a claim over which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion, a plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (quotation

---

[1] After WMATA filed its motion to dismiss, the Court issued an order pursuant to *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), directing the pro se plaintiff to respond. *See* Order of Aug. 21, 2017, Dkt. 4.

3

marks and citation omitted). Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, "the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id*.

When evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted). While a "pro se complaint is entitled to liberal construction," *Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim, *Iqbal*, 556 U.S. at 678. "In determining whether a

complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks omitted). Finally, Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

### A. Thomas properly exhausted administrative remedies.

WMATA argues that Thomas failed to exhaust administrative remedies under Title VII before suing in federal court, *see* Mem. at 10, but the Court disagrees.

Title VII provides that a plaintiff may bring a claim in federal court within ninety days of an EEOC dismissal. *See* 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the [EEOC under Title VII] is dismissed by the Commission, . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved."). The EEOC issued Thomas a Dismissal and Notice of Rights letter on April 28, 2017. Dkt. 7 at 2. Thomas then filed his complaint on July 27, 2017, exactly 90 days after his EEOC dismissal. Dkt. 1. In doing so, he complied with Title VII's requirements for administrative exhaustion.

WMATA climbs uphill in asking the Court to ignore Title VII's plain meaning. WMATA's attempt to circumvent the statutory text reads out of context a single statement from *Martini v. Federal National Mortgage Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999). Namely, "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court." *Id.* at 1347. But *Martini* is properly read to require a 180-day wait only for plaintiffs whose cases have *not been dismissed* by the EEOC. The *Martini* plaintiff received a

5

premature right-to-sue letter based on the assumption that the EEOC would be unable to process the complaint within 180 days, and the EEOC did not actually dismiss the *Martini* plaintiff's administrative action.

In contrast, the EEOC dismissed Thomas's administrative action. *See* Dismissal and Notice of Rights Letter, Dkt. 7 at 2. The EEOC dismissal triggered Thomas's statutory right to file a like civil action within ninety days. *See* 42 U.S.C. § 2000e-5(f)(1); Dismissal and Notice of Rights Letter, Dkt. 7 at 2 ("Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**" (emphasis in original)). To extend *Martini* to block Thomas's lawsuit would cut his statutory right out of the statute. Had Thomas not brought his civil action until 180 days after he filed his administrative action, his civil action would have been barred by the ninety-day statutory window. To require plaintiffs to wait more than 180 days after filing an administrative action *but* no more than ninety days after dismissal of that action would place plaintiffs like Thomas in a Catch-22: file now and lose on failure to exhaust, or file later and lose on lack of jurisdiction.

Further, the Court's reading of *Martini* comports with subsequent discussions of the case, which have consistently read *Martini* to apply only when the EEOC has not dismissed a charge. In *Carr Park, Inc. v. Tesfaye*, the D.C. Circuit observed that "*Martini* struck down an EEOC regulation asserting authority to authorize a private party to sue before 180 days *even if a charge had not been dismissed*." 229 F.3d 1192, 1193 n.1 (D.C. Cir. 2000) (second emphasis added). While *Carr Park* is not controlling because it merely dismissed an attempted interlocutory appeal as untimely, the *Carr Park* Court said that the district judge in that case—by limiting *Martini* to cases that the EEOC has not yet dismissed—"read *Martini* in harmony with the statutory wording . . . ." *Id.* at 1193. The Court today reads *Martini* in the same way—namely,

6

plaintiffs like Thomas need not wait 180 days after filing with the EEOC when the EEOC has already dismissed their administrative actions. *See Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 16–17 (D.D.C. 2003) (denying a motion to dismiss for failure to exhaust where the plaintiff filed a civil action within ninety days of receiving a Dismissal and Notice of Rights letter); *Tesfaye v. Carr Park, Inc.*, 85 F. Supp. 2d 37, 38 (D.D.C. 2000) (same); *see also Fennell v. AARP*, 770 F. Supp. 2d 118, 126 n.4 (D.D.C. 2011) (distinguishing cases involving a final EEOC determination from those, like *Martini*, without a final determination); *McAlister v. Potter*, 733 F. Supp. 2d 134, 144 (D.D.C. 2010) (distinguishing the ninety-day deadline after a final EEOC determination from the 180-day window in cases like *Martini*). Therefore, the Court will deny WMATA's motion to dismiss for failure to exhaust administrative remedies.

**B.      WMATA is immune from ADEA claims.**

WMATA asserts that it is immune from ADEA suits; the Court agrees. A state is immune from federal suits brought by the state's own citizens or the citizens of another state unless the state waives its sovereign immunity or Congress validly abrogates that immunity. *See Jones v. WMATA*, 205 F.3d 428, 431–32 (D.C. Cir. 2000). WMATA originates in a compact signed by Maryland, Virginia, and the District of Columbia, and it enjoys the sovereign immunity of those signatories. *Id.* The signatories to the WMATA compact have not waived sovereign immunity for discretionary employment functions such as hiring and promotion, *see Beebe v. WMATA*, 129 F.3d 1283, 1287–88 (D.C. Cir. 1997), and the ADEA does not abrogate state sovereign immunity, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000). "[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002). Therefore, sovereign immunity forecloses Thomas's claims against WMATA for both monetary damages and injunctive relief under the ADEA. *See Bailey v. WMATA*, 696 F. Supp. 2d 68, 72

(D.D.C. 2010) (dismissing ADEA claims against WMATA for both damages and injunctive relief).

Thomas offers two arguments to contest WMATA's assertion of sovereign immunity: (1) that WMATA waived sovereign immunity by participating in "private corporate activities"; and (2) that "[a]ny award of financial damages will not have to be paid out of funds provided by tax payers." Opp. at 7–8, Dkt. 5. Both arguments fail.

First, WMATA's business activities do not waive sovereign immunity. Decades ago, the Supreme Court required lower courts to analyze whether business activities in interstate commerce constituted a waiver of sovereign immunity. *See Parden v. Terminal Ry. of Ala. State Docks Dep't*, 377 U.S. 184 (1964). But *Parden* has been explicitly overruled, and business activities no longer constitute a waiver of sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999).

Second, Thomas argues that WMATA should not benefit from the signatories' sovereign immunity because taxpayers would not be responsible for any monetary award against WMATA. The D.C. Circuit has foreclosed this argument. The practical result of damages against WMATA "would be payment from the treasuries of Maryland and Virginia," so WMATA benefits from their sovereign immunity. *Jones*, 205 F.3d at 432 (quoting *Morris v. WMATA*, 781 F.2d 218, 225 (D.C. Cir. 1986)).

Therefore, WMATA is immune from Thomas's ADEA claim, and the Court will dismiss it with prejudice.

### C. Thomas states a Title VII claim against WMATA for national-origin discrimination.

WMATA also seeks dismissal of Thomas's Title VII claim of national-origin discrimination. Title VII prohibits employers from "discriminat[ing] against any individual with

8

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from retaliating against an employee who seeks the statute's protections, *see* 42 U.S.C. §§ 2000e-3(a).[2] Because Thomas has adequately pleaded a claim of national-origin discrimination against WMATA, the Court will deny the motion to dismiss that claim.

To survive a Rule 12(b)(6) challenge, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). But addressing a Rule 12(b)(6) challenge to an employment discrimination claim involves an extra wrinkle. Employment discrimination claims for a failure to hire or promote follow the familiar burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff ultimately bears the burden of establishing the specific requirements of a prima facie case of employment discrimination,[3] but that burden does not apply with full force at the motion to dismiss stage. Indeed, the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). The appropriate standard for assessing a motion to dismiss thus resists a concise summation.

---

[2] WMATA addresses its Rule 12(b)(6) argument only to the national-origin discrimination claim, so the Court limits its review to that argument.

[3] According to *McDonnell Douglas*'s specific requirements for a prima facie case of employment discrimination based on a failure to hire or promote, a plaintiff must show: "(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802.

On one hand, before *Twombly* and *Iqbal*, the D.C. Circuit utilized a very permissive standard for pleading employment discrimination. Under that standard, a plaintiff was only required to say that "'I was turned down for a job because of my race' . . . to survive a motion to dismiss under Rule 12(b)(6)." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). But that standard was premised, at least in part, on the now-abrogated standard from *Conley v. Gibson*, which permitted a complaint to survive unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45–46 (1957), *abrogated by Twombly*, 550 U.S. at 544. And the D.C. Circuit's *Sparrow* articulation of *Conley*'s pleading standard for employment discrimination complaints did not survive *Twombly*. *See McManus v. Kelly*, 246 F. Supp. 3d 103, 111 (D.D.C. 2017) ("[A]lthough the issue is not entirely settled, the Court is convinced that the *Sparrow* pleading standard is no longer controlling."); *Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (noting that "*Twombly* and *Iqbal* require more factual context" than the "multiple assumptions" necessary to state a claim under the *Sparrow* standard); *Jackson v. Acedo*, No. 08-cv-1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) ("*Sparrow* is no longer binding authority in light of the[] observations by the Supreme Court in *Twombly*.").

On the other hand, it remains true that courts must not demand that plaintiffs plead the specific requirements of a prima facie case under *McDonnell Douglas*. *Swierkiewicz*, 534 U.S. at 511 ("[I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case."); *Twombly*, 550 U.S. at 569–70 (rejecting arguments that it should abrogate *Swierkiewicz*). Courts must therefore strike a balance between the rigidity of applying the specific requirements

10

of a prima facie case from *McDonnell Douglas*, as rejected in *Swierkiewicz*, and the permissiveness of the *Conley-Sparrow* pleading regime, as rejected in *Twombly*.

The most straightforward way to read *Twombly*, *Swierkiewicz*, and the law of this Circuit may be to refer to the Circuit's general formulation of a prima facie case of employment discrimination (as opposed to the specific requirements for a prima facie case in the failure to hire context, per *McDonnell Douglas*). In general, "[t]o state a prima facie case of discrimination, a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). If applied at the motion to dismiss stage, the general standard's third prong, an "inference of discrimination," could be plausibly pleaded with allegations of either direct or indirect discrimination. This standard would avoid running astray of *Swierkiewicz* without returning to *Sparrow*. And the standard would hew closely to *Twombly* because it is difficult to conceive of a case that would be plausible under *Twombly* without at least raising an "inference of discrimination" under the general test.

Regardless, the Court need not map the precise contours of the appropriate pleading standard at this time. For pleading each element of the general prima facie case is sufficient, even if not necessary, to survive a Rule 12(b)(6) motion to dismiss. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). And Thomas has cleared that bar.

Thomas pleads that he is a member of a protected class because he of Liberian national origin. Compl. ¶ 1. And he adequately alleges an adverse employment action, *i.e.*, WMATA's refusal to promote him. *Id.* ¶ 4. As a result, this dispute boils down to whether the defendants' "action[s] give[] rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091

11

(D.C. Cir. 2015). Most commonly, in the context of a failure to promote, "an inference of discrimination can be established by a plaintiff's elimination of 'the two most common legitimate reasons . . . to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Martin v. D.C.*, 78 F. Supp. 3d 279, 293 (D.D.C. 2015) (quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)); *see Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (a plaintiff's elimination of an "absolute or relative lack of qualification" is generally "sufficient" to establish an inference of discrimination).

Here, Thomas pleads sufficient facts, if accepted as true, to create a plausible inference of discrimination. Thomas alleges that Defendant Kakkar "revised the job description" of the sought-after position "to disqualify Plaintiff." Compl. ¶ 2. According to Thomas, the new job requirements were more stringent than any similar job in the organization, and they demanded more experience than required of the job's direct supervisor. *Id.* ¶ 6. But they did not require Professional Engineering registration, a qualification uniquely possessed by Thomas and required for similar positions throughout WMATA. *Id.* ¶ 11. WMATA proceeded to hire another candidate, even though that candidate allegedly did not meet the posted job requirements and was allegedly less qualified than Thomas. *See id.* ¶¶ 5, 8–11. According to Thomas, WMATA then incorrectly asserted that its chosen candidate met the job's experience requirement by double-counting a single piece of that individual's work history. *Id.* ¶ 9. WMATA disputes Thomas's account and identifies a number of potentially countervailing factors. *See, e.g.*, Reply at 3–5, Dkt. 6; WMATA OIG Report, Dkt. 6-3. But at this stage, the Court accepts Thomas's factual allegations as true and concludes that the complaint at least

raises a plausible inference of discrimination. Therefore, the Court will deny WMATA's motion to dismiss the Title VII claim against WMATA for national-origin discrimination.

> **D. Thomas fails to state Title VII claims and ADEA damages claims against the Individual Defendants, but Thomas states an ADEA claim for prospective injunctive relief against the Individual Defendants.**

WMATA next argues that Thomas's Title VII and ADEA claims against the Individual Defendants must be dismissed. The following sections will address both in turn.

> *1. Title VII*

Turning first to the Title VII claims against the Individual Defendants, "a supervisory employee may be joined as a party defendant in a Title VII action, [but] that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). In such cases, the claims against a supervisory employee "essentially merge[]" with the claims against the employer, so the former may be dismissed. *Id.* In *Gary*, for example, the D.C. Circuit affirmed the dismissal of a redundant Title VII claim. *Id.* And other courts in this district have dismissed merged claims because they are "redundant and inefficient use[s] of judicial resources." *Cruz-Packer v. D.C.*, 539 F. Supp. 2d 181, 185 (D.D.C. 2008) (quotation omitted); *see Ndzerre v. WMATA*, 174 F. Supp. 3d 58, 64–65 (D.D.C. 2016). Here, Thomas's Title VII claims against the Individual Defendants in their official capacities merge with his claims against WMATA, which alone is liable for any violations of Title VII. Therefore, the Court will dismiss with prejudice Thomas's Title VII claims against the Individual Defendants.[4]

---

[4] Title VII does not allow for suits against individuals in their personal capacities. *See Gary*, 59 F.3d at 1399. To the extent that Thomas attempted to name the Individual Defendants in their personal capacities, those claims are dismissed with prejudice.

### 2. ADEA

Thomas also asserts ADEA claims against the Individual Defendants, seeking both damages and injunctive relief. Like the Title VII claims, the ADEA damages claims against the Individual Defendants function solely as damages claims against WMATA. *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("When sued in their official capacities, government officials are not personally liable for damages."). WMATA is immune from ADEA damages. *See supra* Section III.B. The Court will therefore dismiss with prejudice the ADEA damages claims against the Individual Defendants in their official capacities.

Thomas also seeks injunctive relief. In particular, he seeks to be prospectively awarded the promotion for which he was rejected. *See* Compl. at 9. Although WMATA itself is immune from such claims, *see supra* Section III.B, the Individual Defendants are not. Under the *Ex parte Young* doctrine, "[a] federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land." *Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008); *see also Ex parte Young*, 209 U.S. 123 (1908). The doctrine "rest[s] upon the fiction that the suit went against the officer and not the State, thereby avoiding sovereign immunity's bar." *Vann*, 534 F.3d at 749. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 750 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)).

The Court finds no case in this Circuit directly addressing the availability of *Ex parte Young* claims under the ADEA. But the Supreme Court has allowed for such relief under the Americans with Disabilities Act. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374

n.9 (2001) (private individuals may sue for injunctive relief to enforce the standards of the ADA under *Ex parte Young*). And other circuit courts have persuasively applied *Ex parte Young* to the ADEA. *See State Police for Automatic Ret. Ass'n v. DiFava*, 317 F.3d 6, 12 (1st Cir. 2003) (*Young* applies to the ADEA); *Meekison v. Voinovich*, 67 F. App'x 900, 901 (6th Cir. 2003) (unpublished opinion) (same); *see also Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 n.2 (5th Cir. 2016) (implying that *Young* applies to the ADEA); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695–97 (7th Cir. 2007) (same); *Duva v. Bd. of Regents of the Univ. Sys. of Georgia*, 654 F. App'x 451, 453 (11th Cir. 2016) (unpublished opinion) (same); *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) (unpublished opinion) (same).

The Court will follow this course by applying the *Ex parte Young* doctrine to Thomas's ADEA claims against the Individual Defendants. Thomas's complaint alleges an ongoing violation of the ADEA and seeks prospective relief, namely the promotion for which he was rejected, which is sufficient to state a claim against the Individual Defendants. *See* Compl. at 9; *Vann*, 534 F.3d at 749. Therefore, the Court will deny the motion to dismiss the ADEA claims against the Individual Defendants for prospective injunctive relief.[5]

---

[5] The ADEA does not allow for suits against individuals in their personal capacities. *See Jones v. The Wash. Times*, 668 F. Supp. 2d 53, 58 (D.D.C. 2009) (dismissing ADEA claims against individual defendants because the statute does not provide for liability against individual defendants in their personal capacities); *Cruz–Packer*, 539 F. Supp. 2d at 185 (same). To the extent that Thomas attempted to name the Individual Defendants in their personal capacities, those claims are dismissed with prejudice.

Also, the Court notes that the parties briefly discuss whether the Individual Defendants were properly served, *see* Mem. at 8, 11–12; Opp. at 5–6, but WMATA did not move to dismiss for failure to serve the Individual Defendants. Therefore, the Court does not address this possible issue.

### E. Thomas is not authorized to seek punitive damages against WMATA.

Finally, WMATA moves to dismiss Thomas's claims for punitive damages. As a general matter, municipalities are not subject to punitive damages absent express statutory authorization. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–66 (1981); *Daskalea v. D.C.*, 227 F.3d 433, 446–47 (D.C. Cir. 2000); *Smith v. D.C.*, 336 A.2d 831 (D.C. 1975) (per curiam); *see also Coates v. WMATA*, No. 15-cv-2006, 2016 WL 4543991, at *6 (D.D.C. Aug. 31, 2016) ("As a general rule, WMATA's sovereign immunity bars claims against it for punitive damages."). Thomas does not identify any statutory basis for a punitive damages award against WMATA, nor does he cite to any supportive case law. Instead, Thomas repeats the arguments he raised against WMATA's general assertion of sovereign immunity. *See* Opp. at 21–22. Those arguments are beside the point and, at any rate, rejected for the same reasons articulated in Section III.B.

Moreover, the Court's own inquiry does not reveal any statutory authorization for punitive damages against WMATA for the remaining Title VII claims. In Title VII cases involving intentional discrimination in employment, punitive damages are not recoverable against "a government, government agency or political subdivision," such as WMATA. 42 U.S.C. § 1981a(b)(1).[6]

---

[6] In full, the provision reads: "A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1) (emphasis added).

Further, the signatories to WMATA's governing compact did not waive WMATA's immunity with respect to punitive damages. *See* D.C. Code Ann. § 9-1107.01, ¶ 80.[7] "[T]here is no express waiver of immunity for punitive damages in the WMATA Compact and we will not imply one, given the settled state of District of Columbia law." *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 11 (D.D.C. 1998) (quoting *Petticolas v. WMATA*, No. 87-cv-2516, 1988 WL 30754, at *3 (D.D.C. Mar. 22, 1988)); *see also Wainwright v. WMATA*, 958 F. Supp. 6, 10 (D.D.C. 1997) ("[I]t seems clear, as a matter of law, logic, and public policy, that punitive damages are unavailable against WMATA, even for torts arising out of its proprietary functions."). Therefore, punitive damages are not available here, and Thomas's claims to that effect will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part WMATA's Motion to Dismiss. Dkt. 3. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

Date: April 9, 2018

---

[7] In full, the paragraph reads: "The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit." D.C. Code Ann. § 9-1107.01, ¶ 80.