UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERNEST A. THOMAS, *Plaintiff*, v. WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al.*, *Defendants.* | No. 17-cv-1508 (DLF) |

**MEMORANDUM OPINION**

Pro se plaintiff Ernest Thomas brings this action against his employer, the Washington Metropolitan Area Transit Authority (WMATA), under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 (ADEA). Thomas alleges that WMATA rejected his application to serve as Deputy Chief Vehicle Engineer because of his national origin and age, and in retaliation for his previous discrimination complaints. Before the Court are Thomas's and WMATA's cross-motions for summary judgment. WMATA's Mot., Dkt. 23; Thomas's Cross-Mot. (Apr. 12, 2019), Dkt. 27; Thomas's Cross-Mot. (May 13, 2019), Dkt. 28. For the reasons that follow, the Court will grant WMATA's motion and deny Thomas's cross-motions.

**I.  BACKGROUND**

Thomas, a 64-year-old of Liberian nationality, works for WMATA as a Senior Vehicle Engineer. WMATA's Statement of Material Facts ¶¶ 2–3, Dkt. 23-1; Thomas's Resp. ¶¶ 1–2, Dkt. 26. In January 2017, Thomas applied for the position of Deputy Chief Vehicle Engineer. WMATA's Statement of Material Facts ¶ 6; Thomas's Resp. ¶ 2. The job description previously

required a bachelor's degree in engineering and at least ten years of "progressively responsible and diversified engineering management, analysis, and contract oversight experience . . . for a large transit organization." Nov. 26, 2013 Position Description at 3, Dkt. 23-5. When Thomas applied for the position in January 2017, however, the description had been revised to require a bachelor's degree in engineering and at least ten years of experience "for a large transit organization or other engineering firm business experience within the private sector (e.g., consultant, car builder, sub-supplier[,] or major contractor)." Jan. 10, 2017 Position Description at 4, Dkt. 23-6.

Although Thomas's resume was forwarded to Chief Vehicle Engineer Sachit Kakkar for review, Thomas was not selected for an interview. WMATA's Statement of Material Facts ¶¶ 5, 7; Thomas's Resp. ¶ 2. Instead, Kakkar and two other WMATA employees interviewed Anthony Johnson and Curtis Moses, and on March 7, 2017, Johnson was named as Deputy Chief Vehicle Engineer. Selection Memo at 1–2, Dkt. 23-7. According to WMATA, Johnson was selected for an interview (and ultimately for the position) because he had over 17 years of transit experience and ten years of engineering management experience in a rail-oriented firm. WMATA's Mot. at 2, 6. Thomas, by contrast, had substantial experience in the telecommunications industry but did not have ten years of transit or rail-oriented engineering management experience. *Id.*; *see also* Thomas's Dep. at 13, Dkt. 23-3.

Relevant here, Thomas filed two other complaints alleging discrimination by WMATA in 2014 and 2015. Thomas's Aff. ¶¶ 12, 17, Dkt. 26-1. He also filed a third complaint in June 2017 following Johnson's selection for the position of Deputy Chief Vehicle Engineer. *Id.* ¶ 19.

In July 2017, Thomas sued WMATA, Kakkar, WMATA General Manager and Chief Executive Officer Paul Weidefeld, and WMATA Chief of Internal Business Operations John

2

Kuo, alleging national origin and age discrimination as well as retaliation under Title VII and the ADEA. Compl., Dkt. 1. The Court later granted in part and denied in part a motion to dismiss. Apr. 9, 2018 Order, Dkt. 8. It dismissed several of Thomas's claims, but it permitted his Title VII claims against WMATA and his ADEA claims for prospective injunctive relief against the individual defendants in their official capacities to proceed. *Id.* at 1. The parties have now cross-moved for summary judgment. WMATA's Mot.; Thomas's Cross-Mots.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

It is well established, however, that "a plaintiff opposing summary judgment" must "substantiate [his allegations] with evidence" that "a reasonable jury could credit in support of each essential element of h[is] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case,

3

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because Thomas is proceeding pro se, the Court will construe his various filings together, *see, e.g.*, *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), and it will hold him "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## III. ANALYSIS

### A. Thomas's National Origin and Age Discrimination Claims

Title VII bars employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA bars employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Where a plaintiff offers only circumstantial, rather than direct, evidence of discrimination, courts evaluate claims under both statutes using the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972); *see Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010) (Title VII); *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (ADEA). Under that framework, the employee "must first make out a prima facie case" of discrimination. *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). The burden then shifts to the employer to "come forward with a legitimate reason for the challenged action." *Id.* If it satisfies that burden, the court "must conduct one central inquiry in deciding an employer's motion for summary judgment: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was

not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Id.* (internal quotation marks omitted). The D.C. Circuit has emphasized that "the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations adopted and internal quotations marks omitted).

Because WMATA has offered a non-discriminatory reason—that Johnson, unlike Thomas, had ten years of engineering management experience in a rail-oriented firm, WMATA's Mot. at 2—the Court considers only "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis," *Iyoha*, 927 F.3d at 566 (internal quotation marks omitted). Thomas acknowledges that he did not have "ten years of progressively responsible engineering management" experience in the transit industry. Thomas's Dep. at 13. Still, he argues that summary judgment is inappropriate because Johnson was not minimally qualified, Thomas was more qualified than Johnson, and Kakkar deliberately revised the position description to favor Johnson over Thomas. Thomas's Opp'n (Apr. 12, 2019) at 1–2, 7–9, Dkt. 26. Thomas also complains that Kakkar has taken a number of other diverse actions that suggest discriminatory animus. *See, e.g., id.* at 8–9. The Court is unpersuaded.

*First*, Thomas has failed to substantiate his allegations about Johnson's experience with "evidence that a reasonable jury could credit." *Grimes*, 794 F.3d at 94. To support his argument that Johnson lacked any engineering management experience, Thomas offers Johnson's previous resumes, which referred to one of Johnson's job titles as "Sr. Systems Engineer," "Sr. Systems Engineer (Technical Project Manager)," and "Systems Engineer." Thomas's Opp'n (Apr. 12,

5

2019) Ex. 2, at 2, 5, 9, Dkt. 26-2. Thomas also points to two meeting sign-in sheets on which Johnson indicated that he was a "Sys[tems] Eng[ineer]" and a "Project Eng[ineer]." *Id.* at 11, 14. According to Thomas, these documents show that Johnson was not a technical project manager and did not have the requisite managerial experience, in part because "a Systems Engineer cannot be a Technical Project Manager on the same project at the same time." Thomas's Mot. (Nov. 6, 2018) at 7, Dkt. 19. But the conclusions Thomas draws are not supported by the limited evidence he cites. For example, Thomas has offered no evidence that "a Systems Engineer cannot be a Technical Project Manager on the same project at the same time." *Id.* And even if he had, he has offered no evidence that Johnson could only have gained managerial experience if he was a technical project manager. Put differently, Thomas has not established that Johnson did not gain managerial experience at whatever position he held, regardless of his formal job title.

*Second*, a reasonable jury could not find that WMATA's nondiscriminatory reason was pretextual based on Thomas's and Johnson's relative qualifications. Although "[e]vidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination," liability under the anti-discrimination laws "cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates." *Fischbach*, 86 F.3d at 1183. To establish pretext, "the qualifications gap [must be] 'great enough to be inherently indicative of discrimination'—that is, . . . the plaintiff [must be] 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). Thomas was not "markedly more qualified" than Johnson. *Id.* (internal quotation marks omitted). Thomas admits that he did not have ten years

6

of transit or rail-oriented engineering management experience. Thomas's Dep. at 13. Instead, he had significant experience in the telecommunications industry. Thomas's Resume at 1–2, Dkt. 23-4. Johnson, on the other hand, had over 17 years of transit experience and ten years of engineering management experience in a rail-oriented firm. WMATA's Mot. Ex. 7, at 23–24, Dkt. 23-7.

True, Thomas, unlike Johnson, had a professional engineer license. Thomas's Cross-Mot. (Apr. 12, 2019) at 6. But that license was not a necessary qualification for the Deputy Chief Vehicle Engineer position. Jan. 10, 2017 Position Description at 4. And although Thomas argues that it *should* be a necessary qualification, *id.* at 3; *see also* Thomas's Cross-Mot. (May 13, 2019) at 2, 6, "courts must not second-guess an employer's initial choice of appropriate qualifications; rather the courts defer to the employer's decision of what nondiscriminatory qualities it will seek in filling a position," *Jackson v. Gonzales*, 496 F.3d 703, 708 (D.C. Cir. 2007) (alteration adopted and internal quotation marks omitted); *see also Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016) (explaining that a discrimination plaintiff "cannot survive summary judgment merely by asserting that her employer made a bad decision"). On this record, the Court cannot conclude that Thomas was so substantially more qualified that a reasonable jury could infer discrimination.

*Third*, Thomas has not substantiated his allegation that Kakkar "insert[ed] the word 'sub-supplier[']' into the minimum qualifications for the position of Deputy Chief Vehicle Engineer to match the resume of . . . Johnson" and effectively place Thomas at a disadvantage. Thomas's Opp'n (Apr. 16, 2019) at 2. A party who bears the burden of production must "cit[e] to particular parts of materials in the record" to survive summary judgment, Fed. R. Civ. P. 56(c)(1), and when his factual allegations are supported by an affidavit or declaration, that

affidavit or declaration must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4). In other words, a plaintiff cannot rely on an "unsupported claim of conspiracy, derived only from [the plaintiff's] speculation regarding the intentions of third parties of which []he has no personal knowledge." *Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 199 (D.D.C. 2017). Here, Thomas has offered no evidence to support his supposition about Kakkar's intent. Moreover, the rest of the revision to the job description actually made Thomas's selection *more* likely by permitting applicants to apply with ten years of management experience not only in "a large transit organization" but also in "[an]other engineering firm business . . . within the private sector (e.g., consultant, car builder, sub-supplier[,] or major contractor)." Jan. 10, 2017 Position Description at 4. Because of this revision, Thomas was minimally qualified for the position based on his experience in the telecommunications industry.

*Fourth*, the Court is unpersuaded by Thomas's remaining grievances. Thomas argues that Kakkar "denied [Thomas] an interview" for another position "because [Thomas] did not meet the minimum qualification requirements," Thomas's Opp'n (Apr. 16, 2019) at 7, that Kakkar interviewed and hired other individuals for different positions when they did not meet the minimum qualifications, that Kakkar "is in the constant habit of utilizing the scheme of deliberately making the minimum requirements of positions stiff to illegally give him the opportunity to deny candidates that he disfavors and select candidates he favors," *id.* at 7, that Kakkar removed him from a project several years ago, *id.* at 10, that Kakkar has not invited him to certain meetings and has otherwise acted impolitely, *id.* at 11, 14–15, and that Kakkar's

8

"domineering and autocratic administrative practice has caused him to clash with most of the older employees of the Office of Chief Vehicle Engineer," *id.* at 3.

A reasonable jury could not find that WMATA's non-discriminatory reason was pretextual on the basis of these allegations. As an initial matter, Thomas has failed to substantiate with evidence the majority of these allegations, including his speculation that Kakkar "has a predilection for employees to revere him," "has an aversion to highly qualified and experienced employees," and has previously forced older employees to resign or transfer. Thomas's Cross-Mot. (May 13, 2019) at 10. Moreover, his allegations fail to establish "that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Iyoha*, 927 F.3d at 566 (internal quotation marks omitted); *Walker v. Johnson*, 798 F.3d 1085, 1093 (D.C. Cir. 2015) ("The evidence of record must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one."). Although Thomas alleges that Kakkar has generally acted impolitely, he has not argued, for example, that Kakkar commented on employees' national origin or age, or that Kakkar otherwise suggested that he was motivated by an intention to discriminate on the basis of Thomas's or any other employee's national origin or age. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth a general civility code for the American workplace." (internal quotation marks omitted)). Viewed in its totality, the record here would not permit a reasonable jury to conclude that Thomas suffered discrimination on the basis of his national origin or age.[1]

---

[1] Thomas occasionally suggests that Kakkar created a hostile work environment by failing to invite him to meetings and otherwise acting impolitely. *See, e.g.*, Thomas's Cross-Mot. (May 13, 2019) at 10. But Thomas did not allege a hostile work environment claim in his complaint, and even if he had, he would not prevail. To survive summary judgment, a plaintiff alleging a

9

B.     Thomas's Retaliation Claim

Courts evaluating retaliation claims based on circumstantial evidence use the same burden-shifting framework used to evaluate claims of discrimination on the basis of national origin and age. *Walker*, 798 F.3d at 1091. To establish a prima facie case, "the plaintiff must allege that []he engaged in activity protected by Title VII, the employer took adverse action against h[im], and the employer took that action because of the employee's protected conduct." *Id.* at 1091–92. "Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show . . . that []he applied for an available job; and . . . that [h]e was qualified for that position." *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (alterations adopted and internal quotation marks omitted). The burden then shifts to the employer to "identify the legitimate, . . . non-retaliatory reason on which it relied in taking the complained-of action." *Walker*, 798 F.3d at 1092. At that point, "the central question at summary judgment becomes whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual reason and that the employer intentionally . . . retaliated against the employee." *Id.*

No reasonable jury could conclude on this record that WMATA retaliated against Thomas. To support his retaliation claim, Thomas reiterates his previous arguments about his comparative qualifications. *See* Thomas's Cross-Mot. (Apr. 12, 2019) at 13. But as discussed,

---

hostile work environment must "show that []he was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of h[is] employment and create an abusive working environment." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (alterations adopted and internal quotation marks omitted). Thomas's alleged grievances are not "sufficiently severe or pervasive to alter the conditions of h[is] employment and create an abusive working environment." *Id.* (alteration adopted and internal quotation marks omitted).

those arguments do not establish pretext. Next, he argues that an inference of discrimination arises because he previously filed two discrimination complaints in 2014 and 2015.[2] Thomas's Aff. ¶¶ 12, 17; *see also* Thomas's Dep. at 10–11. It is true that "[t]he temporal proximity between an employee's protected activity and h[is] employer's adverse action is a common and often probative form of evidence of retaliation." *Walker*, 798 F.3d at 1092. However, an interval of almost two years between Thomas's last protected activity and WMATA's rejection of his application does not, without more, establish an inference of retaliation. *Id.* at 1093 (no inference of retaliation arose "based upon the mere proximity in time between an employee filing a lawsuit" and an adverse action less than three months later); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (collecting cases holding that an interval of only a few months is insufficient to raise an inference of retaliatory motive). Thus, the Court must conclude that no reasonable jury could find that WMATA rejected Thomas's application in retaliation for his previous complaints.

---

[2] Thomas also argues that he filed a discrimination complaint in June 2017, Thomas's Cross-Mot. (Apr. 12, 2019) at 14, but that complaint is irrelevant because it was filed after WMATA rejected his application for Deputy Chief Vehicle Engineer. WMATA could not have retaliated against Thomas because of this complaint because it had already rejected his application at the time he filed the complaint.

11

## CONCLUSION

For these reasons, the Court grants WMATA's motion for summary judgment and denies Thomas's cross-motions for summary judgment.³ A separate order accompanies this memorandum opinion.

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge

September 5, 2019

---

³ The Court also sua sponte modifies its April 9, 2018 Memorandum Opinion, Dkt. 9, and April 9, 2018 Order, which dismissed several of Thomas's claims with prejudice on sovereign immunity grounds. "Because sovereign immunity deprives the court of jurisdiction, . . . claims barred by sovereign immunity can be dismissed only under [Federal Rule of Civil Procedure] 12(b)(1) and not with prejudice." *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996); *see also Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014) (similar); *Rural Water Sewer & Solid Waste Mgmt. v. Guthrie,* 654 F.3d 1058, 1069 n.9 (10th Cir. 2011)) (similar). The Court therefore dismisses those claims without prejudice.